## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

VICTOR MILLER,
    Plaintiff,

    v.

CHUCK GRAY, in his official capacity
as Wyoming Secretary of State,
    Defendant.

Case No. 26-CV-172-ABJ

PLAINTIFF'S MEMORANDUM IN
SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

## INTRODUCTION

This Memorandum addresses Plaintiff's pending Motion for Preliminary Injunction (ECF No. 2). The Court's May 29, 2026 Order (ECF No. 4) denied Plaintiff's Motion for Temporary Restraining Order on two grounds: (1) that Plaintiff had not adequately demonstrated he is "generally known as 'Victor,'" and (2) that Plaintiff had not shown irreparable harm because Defendant offered to allow him on the ballot under "Victor Miller." That Order, by its own terms, addresses only the TRO. (Order at 1 n.1.) Plaintiff respectfully submits the following in support of the Motion for Preliminary Injunction and the First Amended Verified Complaint filed concurrently herewith.

Plaintiff respectfully submits that the Court's two findings rest on premises that, on the amended record and properly framed constitutional analysis, cannot bear the conclusion. Plaintiff is, in fact, generally known as "Victor" within the meaning of Wyoming Statute § 22-6-111. The harm of being compelled to identify himself on the ballot under a different name is a constitutional injury independent of physical ballot exclusion. And the State's asserted interest in formal nomenclature is, on this record, vanishingly small.

## LEGAL STANDARD

A movant for preliminary injunction must show: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of relief; (3) the balance of equities favors the movant; and (4) the injunction serves the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Diné Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1281 (10th Cir. 2016).

Each factor favors Plaintiff.

## ARGUMENT

### I. Plaintiff Is Likely to Succeed on the Merits.

### A. The plain text of W.S. § 22-6-111 controls.

Wyoming Statute § 22-6-111 provides: "A candidate may use the name on the ballot by which he is generally known." The statutory language is permissive ("may use") and functional ("generally known"). The legislature did not require full legal names. It did not require court-approved nicknames. It did not require any showing of a particular threshold of public recognition. It said: the name by which a candidate is generally known.

Statutory construction begins with the text. The Court's prior ruling appears to read "generally known" to require something close to exclusive recognition under a single short-form name. (Order at 5.) But "generally" does not mean "exclusively" or "primarily." It means "in most cases" or "as a rule." A candidate who is consistently and ordinarily addressed by his first name in his personal, professional, and civic life is, in plain English, "generally known" by that name — even if, on certain formal occasions, he is also referred to by his full name.

This commonsense reading also avoids rendering the statutory provision a nullity. Under a reading that requires exclusive or near-exclusive recognition under a short name, virtually no

candidate would qualify, because virtually every adult is at least sometimes referred to by full name (on legal documents, in news coverage that begins each story with a full-name introduction, etc.). A statute is to be construed so that no provision is rendered meaningless. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

**B. Plaintiff is, in fact, generally known as "Victor."**

The Amended Complaint sets forth specific factual allegations, verified under penalty of perjury, that Plaintiff is addressed as "Victor" in his daily life — at work, at church, by colleagues and neighbors, in personal correspondence, in his Rational Governance Alliance work, in his Rationally Bound Delegate framework writings, and at the American Separation Anxiety Disorder Association he founded. (Am. Compl. ¶¶ 14–22.)

The Court's prior Order noted that news outlets such as The Guardian, NBC News, and Fox News referred to Plaintiff as "Victor Miller," "Mr. Miller," or "VIC" in their 2024 coverage of his mayoral candidacy. (Order at 5.) That observation is correct — but it does not show that Plaintiff is not generally known as "Victor." News organizations follow internal style conventions that require full-name introduction and surname-only subsequent reference. Those conventions speak to journalistic style, not to how a community addresses a man named Victor. The two questions are different. The statute asks the second.

To the extent the Court reads the news articles as the strongest available evidence of how Plaintiff is generally known, the Amended Complaint identifies the relevant universe of evidence: not news outlets in another city writing about a candidate they have never met, but the

people who know Plaintiff and address him daily. Verified allegations in the Amended Complaint provide that evidence on this record.

## C. The administrative rule cannot override the statute.

Defendant's Rejection Letter cites the Wyoming Secretary of State's Election Procedures, Chapter 18, Section 6. To the extent that rule requires use of a full legal name notwithstanding § 22-6-111's express permission to use the name by which the candidate is generally known, the rule is ultra vires. An administrative rule cannot override the statute it implements. See generally Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).

## D. The federal constitutional claims are also likely to succeed.

Beyond the statutory claim, Plaintiff's First and Fourteenth Amendment claims are substantial. The ballot is a forum in which the candidate communicates identity to the electorate. A candidate's chosen ballot name carries expressive content. See Cook v. Gralike, 531 U.S. 510, 525 (2001) (Rehnquist, C.J., concurring in judgment) (state-mandated ballot designations "inject[ ] [the State] into the election process at an absolutely critical point — the composition of the ballot, which is the last thing the voter sees before he makes his choice").

Ballot-name and ballot-designation regulations are evaluated under Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992). See Rubin v. City of Santa Monica, 308 F.3d 1008, 1015 (9th Cir. 2002); Chamness v. Bowen, 722 F.3d 1110, 1117 (9th Cir. 2013); Mazo v. N.J. Sec'y of State, 54 F.4th 124, 138 (3d Cir. 2022). The Anderson-Burdick framework weighs "the character and magnitude of the asserted injury" against "the precise

interests put forward by the State as justifications for the burden imposed." Anderson, 460 U.S. at 789.

Here, the State has identified no concrete interest. There is no voter confusion (no similar-named candidate exists). There is no impersonation risk (Plaintiff's identity is verifiable through voter registration). There is no fraud allegation. The Wyoming Legislature itself, in W.S. § 22-6-111, identified the only credible naming concern (similar names among multiple candidates) and resolved it not by requiring full legal names but by adding occupation and residence in such cases. The State's interest in formal nomenclature, divorced from any concrete operational concern, is at best minimal. Under Anderson-Burdick balancing, even a modest burden outweighs an interest of that weight.

Plaintiff is likely to succeed on the merits.

## II. *Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief.*
### A. The proper framing of the harm.

The Court's prior Order framed the asserted harm as a difference between "Victor Miller" appearing on the ballot and "Victor" appearing on the ballot, and found no irreparable injury because Defendant offered Plaintiff the opportunity to be on the ballot under "Victor Miller." (Order at 6.) Respectfully, that framing understates the constitutional stakes.

The harm is not merely the appearance of different letters next to a candidate's name. The harm is the State's compulsion of the candidate to identify himself on the ballot under a name he did not choose. That compelled identification is itself a First Amendment injury. The fact that a person can comply with an unconstitutional condition does not eliminate the constitutional

violation. See, e.g., Speiser v. Randall, 357 U.S. 513, 526 (1958) (state may not condition a benefit on the surrender of a constitutional right).

Were the rule otherwise, every compelled-speech case could be defeated by the State's observation that the speaker remained free to comply. That is not the law. See W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943) (compelled pledge of allegiance unconstitutional even though students remained free to recite it); Wooley v. Maynard, 430 U.S. 705 (1977) (compelled display of state motto on license plate unconstitutional even though display was a condition of vehicle operation).

**B. First Amendment injuries are irreparable as a matter of law.**

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality); accord Verlo v. Martinez, 820 F.3d 1113, 1127 (10th Cir. 2016) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citation omitted)). Where, as here, the plaintiff has shown a likelihood of success on a First Amendment claim, irreparable harm follows.

**C. The harm extends beyond the candidate's chosen identification.**

Plaintiff has, over the course of years, built a public political identity around the name "Victor." That identity is the predicate for an ongoing civic organization (the Rational Governance Alliance), a recognized public persona dating from his 2024 mayoral run, and the continuity of his political project. The compelled adoption of a different ballot identification severs that

continuity at the moment the public most needs it: the moment of decision at the ballot. That injury cannot be remedied post hoc.

### III. The Balance of Equities Tips Decisively in Plaintiff's Favor.

The relief Plaintiff seeks is modest: that Defendant comply with the plain text of W.S. § 22-6-111 and accept the candidate name Plaintiff has chosen. Defendant cannot claim equitable harm from being ordered to follow Wyoming statute. Plaintiff, by contrast, faces the loss of a constitutional right at the critical electoral moment.

### IV. The Injunction Serves the Public Interest.

The public has a powerful interest in ballots that include all lawfully qualified candidates under the names by which those candidates are publicly known, and in the enforcement of duly enacted statutes over administrative interpretations that exceed statutory authority. The Purcell doctrine does not counsel restraint here: the August primary is months away, and ballot printing has not yet begun. There is ample time to grant the relief Plaintiff seeks without disturbing the orderly administration of the election.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Motion for Preliminary Injunction, enter a declaratory judgment that Defendant's rejection violates W.S. § 22-6-111 and the federal and Wyoming constitutions, and order Defendant to accept Plaintiff's candidate application under the name "Victor."

Dated: _____, 2026

_____
**Victor Miller**

Plaintiff Pro Se
100 E 28th Street
Cheyenne, Wyoming 82001
(307) 630-6010
rationalgovernancealliance@gmail.com