Kate Gamble, # 8-7286
Mackenzie Williams, # 6-4250
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7886
(307) 777-8920 Facsimile
kate.gamble2@wyo.gov
mackenzie.williams@wyo.gov

**UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING**

| | |
|---|---|
| VICTOR MILLER, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | Case No. 26-CV-172-ABJ |
|    vs. ) | |
| ) | |
| CHUCK GRAY, in his official capacity as ) | |
| Wyoming Secretary of State, ) | |
| ) | |
|    Defendants. ) | |
| ) | |

**MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Wyoming Secretary of State Chuck Gray, through the Wyoming Attorney General's Office, submits this memorandum supporting his motion to dismiss Victor Miller's claims against him.

## I.      Introduction

Miller is suing because the Secretary rejected his application for nomination for the office of United States Senator. (Am. Compl. ¶ 21). Miller submitted an application for nomination by party primary for United States Senate to run in the 2026 primary election. *(Id.)*.

Page 1 of 24

He listed "Victor" as the name he wished to appear on the ballot. (*Id.*). Before the filing period ended, the Secretary rejected the application because it failed to meet statutory and regulatory requirements. (*Id.* ¶ 23). The Secretary invited Miller to submit a new application conforming to the requirements in Wyo. Stat. Ann. § 22-6-111 and the relevant rules. (*Id.* ¶¶ 23-25). He also requested that Miller provide a written certification of personhood if he chose to submit a new application. (*Id.* at 24).

Miller declined to file a new application. Instead, before the filing period ended, he filed a complaint in this Court seeking declaratory relief against the Secretary.[1] Additionally, Miller filed a motion for a temporary restraining order and a motion to proceed in forma pauperis. Shortly thereafter, this Court denied Miller's motions, finding that Miller did not show an inability to pay the filing fee, nor did Miller's motions show a likelihood to succeed on the merits and irreparable harm. (Order Den. Pl.'s Mot.to Proceed In Forma Pauperis & Mot. for TRO, p. 4, 5, 6). In response, Miller filed an amended complaint containing eleven claims. (Am. Compl. ¶¶ 37-68). Miller brings four claims under 42. U.S.C. § 1983, asserting that the Secretary violated his rights under the First and Fourteenth Amendment of the United States Constitution. (*Id.* ¶¶ 37-50). He also brings seven claims under 28 U.S.C. § 1367(a) asserting that the Secretary violated state law, including article 1, §§ 3, 6, 7, 20, 27, and 34 of the Wyoming Constitution. (*Id.* ¶¶ 51-68). Miller's claims are summarized as follows:

1.     The Secretary violated Miller's first amendment right to free speech under the United States Constitution when he rejected Miller's application. (*Id.* ¶¶ 37-41).

2.     The Secretary violated the equal protection clause of the United States Constitution when he requested Miller to submit a written confirmation of personhood with

---

[1] Miller did not properly serve his original complaint, or any other documents filed in this matter including the amended complaint, in accordance with Rule 4(c)(1) of the Federal Rules of Civil Procedure.

any subsequent application. (*Id.* ¶¶ 42-44).

3.      The Secretary violated Miller's due process rights under the United States Constitution when he rejected Miller's application. (*Id.* ¶¶ 45-46).

4.      The Secretary rejecting Miller's application fails the *Anderson-Burdick* balancing test because no state interest is served by rejecting Miller's chosen ballot name. (*Id.* ¶¶ 47-50).

5.      The Secretary violated Miller's equal political rights under article 1 § 3 of the Wyoming Constitution when he rejected Miller's application and requested Miller to submit a written confirmation of personhood. (*Id.* ¶¶ 51-53).

6.      Miller is a duly qualified candidate and therefore, the Secretary interfered with "voters' untrammeled exercise of suffrage" under article 1, § 27 of the Wyoming Constitution when he rejected Miller's application. (*Id.* ¶¶ 54-56).

7.      The Secretary's decision to enforce chapter 18, § 6 of the Secretary's administrative rules constitutes an arbitrary use of power under article 1, § 7 of the Wyoming Constitution because the rule exceeds the scope of the authorizing statute. (*Id.* ¶¶ 57-59).

8.      The Secretary violated Miller's due process rights under article 1, § 6 of the Wyoming Constitution. (*Id.* ¶¶ 60-61).

9.      The Secretary violated Miller's free speech rights under article 1, § 20 of the Wyoming Constitution because Miller's chosen ballot name is a form of political expression. (*Id.* ¶¶ 62-63).

10.     The Secretary's request that Miller submit a written certification of personhood violates article 1, § 23 of the Wyoming Constitution because no other similarly situated applicant was required to submit verification of personhood. (*Id.* ¶¶ 64-66).

11.     The Secretary's decision to reject Miller's application is ultra vires and void because chapter 18, § 6 of the Secretary of State's rules exceeds the scope of Wyo. Stat. Ann. § 22-6-111 and therefore, is unenforceable. (*Id.* ¶¶ 67-68).

As a result, Miller asserts he is entitled to declaratory judgment that he may appear on the ballot as "Victor," and that the Secretary's decision to reject his application violates his rights under the United States and Wyoming Constitutions. (*Id.* p. 11).

## II.   Legal Standard

Rule 12(b)(6) authorizes a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, this Court should "accept as true all well-pleaded factual allegations . . . and view th[o]se allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (citation omitted). Even while accepting factual allegations as true, however, a court is not bound to accept a "legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the pleading requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, [which] accepted as true, . . . 'state[s] a claim to relief that is plausible on its face.'" *Llacua v. Western Range Ass'n*, 930 F.3d 1161, 1178 (10th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A claim is facially plausible when the plaintiff has pled factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff may obtain relief." *Id.*

## III.   Argument

**A.    Miller fails to state a claim upon which relief can be granted with respect to his First and Fourteenth Amendment claims.**

Miller makes four claims under 42 U.S.C. § 1983. (Am. Compl. ¶¶ 37-50). Specifically, Miller alleges the Secretary infringed on his rights to free speech and equal protection under

the First and Fourteenth Amendments of the U.S. Constitution. (*Id.* ¶¶ 37-44). Miller also asserts that he was deprived due process under the Fourteenth Amendment. (*Id.* ¶¶ 45-46). Additionally, Miller contends that the Secretary cannot satisfy the balancing test established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992), known as the *Anderson-Burdick* balancing test. Because the Secretary never infringed upon Miller's constitutional rights, he fails to state claims under the First and Fourteenth Amendments upon which relief can be granted and this Court should dismiss Miller's § 1983 claims.

**1.      The Secretary's decision to reject Miller's application does not violate his right to free speech.**

Miller appears to bring two claims asserting that the Secretary violated his First Amendment right to free speech. (Am. Compl. ¶¶ 37-41, 47-50). Specifically, Miller first claims that the Secretary's rejection constitutes government action compelling speech because the name "Victor Miller" is inconsistent with his political identity. (*Id.* ¶ 39). Second, Miller asserts in his fourth claim that the Secretary's rejection fails the *Anderson-Burdick* balancing test because the state only has a trivial interest in regulating Miller's chosen ballot name. (*Id.* ¶ 49).

A candidate's name on the ballot is not protected speech. Moreover, even if the Secretary's rules burdened Miller's protected constitutional right to free speech, the State has a legitimate interest in regulating the electoral process. Chapter 18, § 6 is not an unconstitutional infringement on Miller's right to free speech.

Courts apply a traditional First Amendment analysis to state election law challenges if the law regulates pure speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995).

In other words, if the election law prevents the "speaker from saying something," a traditional First Amendment analysis is appropriate. *VoteAmerica v. Schwab*, 121 F.4th 822, 840 (10th Cir. 2024). Conversely, courts apply the *Anderson-Burdick* balancing test to resolve First Amendment challenges to a state election law if the law regulates "the mechanics of the electoral process." *Id.*; *Burdick*, 504 U.S. at 434. In short, *Anderson-Burdick* applies when: (1) a law burdens a constitutional right, and (2) regulates the mechanics of the electoral process instead of core political speech. *Mazo v. New Jersey Secretary of State*, 54 F.4th 124, 138 (3rd Cir. 2022).

The First Amendment prohibits the government from abridging the freedom of speech. This includes conduct that communicates ideas. But the First Amendment does not protect all conduct that is meant to be expressive. *Rumsfeld v. F. for Acad. & Inst'l Rts., Inc.*, 547 U.S. 47, 66-67 (2006). Instead, it only protects conduct that is inherently expressive. *Id.* Expression is expressive conduct and therefore speech if the person intended to convey a particular message with their conduct and there is a great likelihood that others would understand the message. *Spence v. Washington*, 418 U.S. 405, 410-11 (1974).

A candidate's name on the ballot is not speech protected by the First Amendment. As an initial matter, there is no case in the Tenth Circuit Court of Appeals or the United States Supreme Court holding that a candidate's ballot name is protected expression. The Supreme Court has consistently held that the purpose of the ballot is to elect candidates, not to serve as a forum for political expression. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997). Political candidates do not have a right to use the ballot to send a particular message or communicate their political identity. *Id.* As a result, a candidate's ballot name cannot be expressive conduct entitled to free speech protections as a matter of law.

The mere fact that Miller conclusively asserts that his chosen ballot name is constitutionally protected political expression does not negate precedent establishing that candidate information provided on the ballot is informational as opposed to expressive. *Id.* Accordingly, Miller cannot demonstrate that appearing on the ballot as "Victor" as opposed to "Victor Miller" is protected speech. This Court should dismiss Miller's first and fourth claim for failure to state a claim upon which relief can be granted.

Even if this Court concludes the name used on the ballot is protected speech, chapter 18, § 6 of the Secretary's rules do not unconstitutionally infringe on Miller's First Amendment right to free speech.  It is a general rule that "states have the power to regulate their elections and access to their ballots." *Am. Const. Law Found., Inc. v. Meyer*, 120 F.3d 1092, 1097, (10th Cir. 1997); U.S. Const. Art. I, § 4, cl. 1; Art. II, § 1, cl. 2; *Timmons*, 520 U.S. at 358. To ensure a fair and honest democratic process, states have broad authority over federal, state, and local elections and specifically may impose time, place, and manner rules on federal elections. U.S. Const. Art. I, § 4, cl. 1; Art. II, § 1, cl. 2; *Timmons*, 520 U.S. at 358; *Mazo*, 54 F.4th at 136. This includes the ability to govern "registration and qualification of voters, the selection and eligibility of candidates, [and] the voting process itself." *Anderson*, 460 U.S. at 788. Accordingly, state election regulations necessarily affect a candidate's expression and association rights. *Id.*; *Mazo*, 54 F.4th, 137. As a result, courts must determine whether it is most appropriate to review a constitutional challenge to a state election law under a traditional First Amendment analysis, or whether it should apply the *Anderson-Burdick* balancing test.

Courts apply the *Anderson-Burdick* balancing test to resolve First Amendment challenges to state election laws if the law regulates "the mechanics of the electoral process." *Burdick*, 504 U.S. at 434. To determine whether the law regulates "pure speech" or the

"mechanics of the electoral process," this Court must look to the location and timing of the regulated speech, and the nature and character of the speech. *Mazo*, 54 F.4th at 142-43. Regarding timing and location, "speech that occurs on the ballot or within the voting process" is typically analyzed under *Anderson-Burdick*. *Id.* at 142. Conversely, "speech that relates to an election but occurs nowhere near the ballot or any other electoral mechanism" is political speech analyzed using a traditional First Amendment analysis. *Id.*

Regarding the character and nature of the regulated speech, a traditional First Amendment analysis is appropriate when pure political speech involving "interactive communication concerning political change" is the subject of the regulation. *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186 (1999); *Mazo*, 54 F.4th at 142-43. Based on these considerations, the Tenth Circuit has historically applied the *Anderson-Burdick* test to ballot access, party association, and voting rights claims. *VoteAmerica*, 121 F.4th at 841.

Miller concedes that the *Anderson-Burdick* balancing test applies, and assuming any analysis is necessary, the Secretary agrees. (Am. Compl. ¶¶ 47-50). Therefore, if this Court determines the Miller has a free speech interest in appearing on the ballot as "Victor," it should apply the *Anderson-Burdick* test to resolve Miller speech claims.

The Secretary rejected Miller's application under Wyo. Stat. Ann. § 22-6-111 and chapter 18, § 6 of the Secretary of State's rules. *Rules, Wyo. Secretary of State Off.*, Ch. 18, § 6 (Oct. 22, 2013); (Am. Compl. ¶ 23). Wyoming Statute § 22-6-111 provides:

> A candidate may use the name on the ballot by which he is generally known. Professional titles and degrees shall not appear on the ballot. If in the opinion of the officer with whom the application for nomination or election is filed the name of two (2) or more candidates for any office to be voted on at the same election are the same or so similar as to confuse the electors as to the candidates' identity, the occupation and residence address of each of these candidates shall be printed under the candidate's name on the ballot.

*Id.* Additionally, the regulation at issue provides, in relevant part:

> A candidate is required to use his full name on his application for nomination or election. Fictitious or pseudo names will not be allowed. The Secretary of State or a County Clerk may ask for verification of name at time of filing.

*Rules, Wyo. Secretary of State's Office*, Ch. 18, § 6(a) (Oct. 22, 2013).

Under the location and timing factors, the speech regulated by these legal authorities—the name the person wishes to appear on the ballot—exclusively occurs on the ballot or during the actual voting process. *Mazo*, 54 F.4th at 142-43. Chapter 18, § 6 establishes standards for how candidates' names appear of the ballot itself. In other words, the rule and statute only affect how candidate information appears on the ballot. *Id.* They do not regulate the name Miller uses during his political campaign or otherwise infringe on Miller's political expression, which may trigger a traditional First Amendment analysis. *See McIntyre*, 514 U.S. at 345 (declining to apply the *Anderson-Burdick* test to a law prohibiting anonymous campaign literature because a regulation on campaign speech is a regulation of pure speech instead of the mechanics of the electoral process). Accordingly, the *Anderson-Burdick* test is the appropriate analysis for Miller's First Amendment claims.

Under the character and nature factor, the regulated speech is not pure political speech involving "interactive communication concerning political change" that requires a traditional First Amendment analysis. *Buckley*, 525 U.S. at 186. Specifically, the regulated speech is not a "one-on-one" interaction with voters or communication between individuals on political issues. *Meyer v. Grant*, 486 U.S. 414, 424 (1988). Instead, § 22-6-111 and chapter 18, § 6 regulate the name candidates use to identify themselves to voters at the time they cast their vote. Casting a vote does not involve one-on-one communication about political issues. *See*

*Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 15 (2018) ("Casting a vote is a weighty civic act[.] It is a time for choosing, not campaigning."). As a result, the regulated speech at issue in this case concerns the "mechanics of the electoral process" and should be analyzed under the *Anderson-Burdick* balancing test. *Mazo*, 54 F.4th at 142-43.

> Under the *Anderson-Burdick* balancing test, this Court must:
>
> Weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule.

*Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789) (internal quotations omitted). In balancing the parties' interests, courts consider the "extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* Therefore, this Court must examine the burden on Miller's First Amendment rights. *Id.* If the restriction is severe, the regulation must be narrowly drawn to advance a compelling state interest. *Id.* But if the regulation merely imposes a "reasonable and nondiscriminatory restriction," the State only needs a legitimate interest to justify the regulation. *Id.*

Here, the burden is reasonable and nondiscriminatory. Both § 22-6-111 and chapter 18, § 6 reasonably guide the electoral process and indiscriminately apply to all candidates applying for nomination. Specifically, chapter 18, § 6(a) merely requires candidates to identify themselves on the ballot using their full name. Persons applying for elected office generally have a first and last name, lending to the regulation's reasonableness and equal application. Moreover, the United States Supreme Court has expressly concluded that "ballots are designed primarily to elect candidates, not to serve as forums for political expression." *Timmons*, 520 U.S. at 352. Requiring candidates to identify themselves on the ballot under their full names

instead of pseudonyms ensures that ballots are used for their intended purpose of correctly identifying candidates to voting members of the public, as opposed to political campaigning. Accordingly, the regulation is reasonable and nondiscriminatory, and the Secretary only needs a legitimate interest justifying the regulation. *Burdick*, 504 U.S. at 434.

The United States Supreme Court has consistently found that states have an interest in preserving the integrity of the electoral process and in preventing voter confusion and misrepresentation. *Rosario v. Rockefeller*, 410 U.S. 752, 761 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 221-22 (1986); *Norman v. Reed*, 502 U.S. 279, 290 (1992). Consequently, the Secretary has a legitimate interest in properly identifying the candidates for United States Senate on the ballot in a manner that prevents voter confusion, misrepresentation and promotes an orderly electoral process. Requiring candidates to use their full name on the ballot mitigates the risk that voters will not know who a candidate is based on their pseudonym or believe that the ballot has been misprinted. It also supports the state's interest in ensuring that Wyoming voters are informed and making responsible decisions. *Tashjian*, 479 U.S. at 221-22.

Miller asserts that he has an interest in appearing as "Victor" on the ballot because "Victor" encompasses his political identity, and a candidate's ballot name is a form of core political expression. (Am. Compl. ¶¶ 33, 39). But as already discussed, the purpose of the ballot is to "elect candidates, not to serve as forums for political expression." *Timmons*, 520 U.S. at 352. As a result, political candidates to not have a right to use the ballot to send a particular message or communicate their political identity. *Id.*

As a factual matter, Miller's allegations do not support his argument that he is generally known as "Victor." Miller asserts that he is called "Victor" by his friends and family, at work,

and in business dealings and at church. (Am. Compl. ¶ 12). He also alleges that he answers the phone and introduces himself as "Victor," and is known as Victor within his professional network at the Laramie County Library, the Rational Governance Alliance, and the American Separation Anxiety Disorder Association. (*Id.* ¶¶ 13-17). Lastly, Miller alleges during his 2024 mayoral campaign, he run under the political identity "VIC," which is tied to his first name, "Victor." (*Id.* ¶ 18).

These factual allegations do not demonstrate that Miller is generally known as "Victor" such that "Victor" appearing on the ballot would not cause voter confusion or potentially misrepresent which "Victor" Wyoming voters may vote for. *See Weiler v. Ritchie*, 788 N.W.2d 879, 884-85 (Minn. 2010) (concluding that the public must broadly and widely know the candidate as his alternative name, not just the candidate's family, friends, and co-workers). Miller may use a given name in personal interactions, but that does not mean it is the name by which he is broadly and widely known as to the public. *Id.* Appearing as "Victor" may even confuse voters who knew Miller as "VIC" in 2024 because "VIC" and "Victor" are two entirely different names. (Am. Compl. ¶ 18). In fact, Miller conceded that news outlets referred to him as "Victor Miller" to the public during his 2024 mayoral campaign. (*Id.* ¶¶ 18-19). Miller's allegations merely demonstrate that he uses his first name in personal interactions like other candidates seeking elected office and people in general.

Additionally, Miller makes no factual allegations that he will be harmed or burdened by appearing on the ballot as "Victor Miller," beyond his assertion that "Victor" best represents his political identity. (*Id.* ¶ 39). Therefore, Miller cannot demonstrate that the burden imposed on his interest in appearing on the ballot as "Victor" outweighs the Secretary's interest in preventing voter confusion and misrepresentation. Accordingly, the Secretary has a legitimate

interest justifying the regulation in chapter 18, § 6(a) and his decision to reject Miller's application did not violate Miller's First rights. Miller has not stated a claim upon which relief can be granted, and this Court should dismiss Miller's first and fourth claims alleging that the Secretary infringed upon his First Amendment rights.

### 2. The Secretary's decision to reject Miller's application did not violate Miller's due process rights under the fourteenth amendment.

Miller asserts the Secretary's decision to reject his application violated Miller's Fourteenth Amendment due process rights. (Am. Compl. ¶ 46). Specifically, Miller asserts that "[the Secretary]'s interpretation of [Wyo. Stat. Ann.] § 22-6-111 contradicts the plain text of the statute, deprives [Miller] of fair notice of the agency's interpretive position, and affords [Miller] inadequate opportunity to be heard before the agency's final decision." (*Id.*). While it is unclear from the amended complaint whether Miller alleges a procedural or substantive due process violation, Miller cannot demonstrate that he has a protected property or liberty interest to which due process rights attach. Therefore, Miller fails to state a claim upon which relief can be granted and this Court should dismiss the Fourteenth Amendment due process claim.

The Fourteenth Amendment prohibits the state from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. To bring an actionable due process claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived a liberty or property interests without due process. *Stears v. Sheridan County Memorial Hosp. Bd. of Trustees*, 491 F.3d 1160, 1162 (10th Cir. 2007). Specifically, a person alleging he was deprived procedural due process must demonstrate that he "possessed a constitutionally protected liberty or property interest" and was not "afforded an appropriate level of process." *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty. Kan.*, 483 F.3d 1086,

1093 (10th Cir. 2007). Conversely, a person alleging that he was deprived substantive due process by an executive branch actor must demonstrate that he possessed a constitutionally protected interest, and the executive action must shock the conscious of the federal courts. *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006); *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006). But regardless of whether the due process challenge is procedural or substantive, a plaintiff must first demonstrate that he possesses a protected liberty or property interest. *Stears*, 491 F.3d at 1162.

Miller's contention that the Secretary violated his due process rights fails regardless of whether Miller asserts a procedural or substantive due process violation claim because he cannot demonstrate a protected property or liberty interest. *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). First, Miller does not, and cannot, allege that he has a protected property interest in appearing on the ballot as "Victor." The Constitution does not create property interests. *Stears*, 491 F.3d at 1163. Rather, "[a] property interest includes a 'legitimate claim of entitlement' to some benefit created and defined by 'existing rules of understandings that stem from an independent source such as state law.'" *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). There is no state law entitling candidates to appear on the ballot under any name they choose. Nor has Miller identified any state law that creates an entitlement to some action by the Secretary that would give rise to a protected property interest. The relevant statute merely affords the opportunity appear on the ballot under the candidate's generally known name, which in this case is Miller's first and last name. Wyo. Stat. Ann. § 21-6-111; *Rules*, *Wyo. Secretary of State Off.*, Ch. 18, § 6 (Oct. 22, 2013). In other words, the statute and rules establish a clear standard for how candidates are identified on the ballot—it does not

entitle candidates to choose a ballot name that does not identify them to voters.

Second, Miller cannot demonstrate that he has a protected liberty interest. A protected liberty interest may be created by the due process clause itself or state or federal law. *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998). They arise when substantive limitation is put on official discretion. *M.A.K. Invst. Group, LLC v. City of Glendale*, 897 F.3d 1303, 1310 (10th Cir. 2018). Like a protected property interest, a liberty interest only exists and the person receives due process protections if the interest is an entitlement. *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). In other words, the liberty right is entitled to due process protections if it "is mandated by state law when specified substantive predicates exist." *Id.*

Here, the statute allows candidates to appear on the ballot under their "generally known" name. Wyo. Stat. Ann. § 21-6-111. Under the Secretary's rules, a candidate's generally known name is their first and last name. *Rules*, *Wyo. Secretary of State Off.*, Ch. 18, § 6(a). Accordingly, the Secretary's official discretion is limited to accepting applications that contain the applicant's first and last name. *M.A.K. Invst. Group, LLC*, 897 F.3d at 1310. Miller did not put the required name on the application. (Am. Compl. ¶ 21). He used a pseudonym on his application, of which the Secretary was statutorily allowed—perhaps required— to reject. (*Id.*). As a result, Miller cannot demonstrate that he has a protected property or liberty interest in appearing on the ballot as "Victor" to which due process protections attach. This Court should dismiss his Fourteenth Amendment due process claim.

### 3. The Secretary's request that Miller provide a written certification of personhood did not violate the Fourteenth Amendment equal protection clause.

Miller asserts that the Secretary violated the Fourteenth Amendment equal protection clause when he asked Miller to submit a written confirmation of personhood. (Am. Compl. ¶¶

42-44). Specifically, Miller alleges that the Secretary did not require any other candidate to submit a written certification demonstrating personhood or elector qualification and, as a result, Miller is being treated different than other similarly situated candidates. (*Id.* at ¶¶ 27, 43-44). Even construing the factual allegations in the amended complaint liberally, Miller fails to state a claim upon which relief can be granted. Accordingly, this Court should dismiss Miller's Fourteenth Amendment equal protection claim.

The Fourteenth Amendment's equal protection clause provides that "[n]o state shall deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the equal protection clause, the state must treat all similarly situated persons alike and therefore, must treat all like cases alike. *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018); *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008). But the state "may treat unlike cases accordingly." *Coalition for Equal Rights, Inc.*, 517 F.3d at 1199. The Tenth Circuit considers people to be similarly situated if they are alike "in all relevant respects." *Grissom*, 902 F.3d at 1173.

To bring a claim under § 1983 for violation of the equal protection clause, a plaintiff must show that he "is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class." *Arabalo v. City of Denver*, 625 Fed. Appx. 851, 867 (10th Cir. 2015) (citing *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). An individual may bring a "class of one" claim if the discrimination is against a specific individual instead of a class of persons. *SECSYS, LLC*, 666 F.3d at 688. To bring a class of one claim, the plaintiff must show that he was "intentionally treated differently from others similarly situated" and there was no rational basis for differential treatment. *Id.*

Here, Miller plainly asserts a class of one claim under the equal protection clause.

Page 16 of 24

*SECSYS, LLC*, 666 F.3d at 688. In his amended complaint, Miller asserts that the Secretary discriminated against Miller alone when he requested that Miller submit a written certification of personhood. (Am. Compl. ¶ 43). Additionally, Miller asserts that the Secretary's differential treatment is not rationally related to a legitimate state interest. (*Id.* ¶ 44). Accordingly, this Court must analyze Miller's Fourteenth Amendment equal protection claim under the class of one factors. *SECSYS, LLC*, 666 F.3d at 688.

Under the class of one analysis, Miller fails to state a claim upon which relief can be granted because he does allege any facts demonstrating that there were similarly situated candidates and their characteristics. *Glover v. Mabrey*, 384 Fed. Appx. 763, 778 (10th Cir. 2010). To properly allege a class of one claim, the plaintiff must allege "the identity or characteristics of other similarly situated [persons] and how those similarly situated [persons] were treated differently. *Glover v. Mabrey*, 384 Fed. Appx. 763, 778 (10th Cir. 2010). In *Village of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000), for example, the Supreme Court found that one plaintiff sufficiently pled a class of one claim when the plaintiff was the only homeowner required to have a 33-foot easement as a condition to connect to the municipal water supply, whereas all other similarly situated homeowners were required to have a 15-foot easement. *Id.* In contrast, the Tenth Circuit in *Glover* dismissed for failure to state a claim because the plaintiff did not allege the "identity or characteristics of other similarly situated" individuals, or allege how similarly situated individuals were treated differently. 384 Fed. Appx. at 778.

Miller's amended complaint contains the same defaults found in *Glover*—it contains no specific factual allegations identifying or describing other similarly situated candidates. *Id.* He does not allege that there were alike candidates, and therefore that he was treated differently

than others similarly situated. Specifically, he does not allege that other applicants applied using a pseudonym or a name other than their first and last name under the same circumstances as Miller, and were asked to submit a written certification of personhood. He merely asserts that the "written-confirmation-of-personhood requirement . . . has not been imposed on similarly situated candidates." (Am. Compl. ¶ 43). The only factual allegation he provides is that "[u]pon information and belief," no other applicant was required to submit a written certification of personhood. (*Id.* ¶ 27). Absent factual allegations demonstrating that another applicant submitted a faulty application—but was not required to reapply and submit a written certification—Miller's complaint fails to allege that there were alike applicants who were treated differently. His conclusory assertion, without more, fails the first prong of the class-of-one analysis and therefore he does not allege a plausible class of one equal protection claim. Accordingly, Miller fails to state a claim upon which relief can be granted, and this Court should dismiss his equal protection claim.

**B.      Miller has failed to state a claim upon which relief can be granted with respect to his state claims.**

Miller's remaining claims are purely questions of state law arising under the Wyoming Constitution. Specifically, Miller requests that this Court declare that the Secretary's decision rejecting Miller's application violates article 1, §§ 3, 6, 7, 20, 27, and 34 of the Wyoming Constitution. For the foregoing reasons, this Court should conclude that Miller fails to state a claim upon which relief can be granted, and should dismiss Miller's state law claims.

As an initial matter, this Court should dismiss Miller's state law claims if it dismisses his federal law claims. *Estate of Burgas by and through Zommer v. Bd. of Cnty. Comm'rs Jefferson Cnty. Colo.*, 30 F.4th 1181, 1190 (10th Cir. 2022). Federal district courts have

supplemental jurisdiction over state law claims if those claims are part of the same case or controversy giving rise to the federal claims. 28. U.S.C. § 1367(a). District courts may decline to exercise supplemental jurisdiction if the court "dismiss[es] all claims over which it was original jurisdiction[.]" *Id.* § 1367(c)(3). In this case, Miller brings his state law claims pursuant to 28 U.S.C. § 1367 and the Secretary does not dispute that Miller's state law claims arise from the same case or controversy as his federal claims. (Am. Compl. ¶ 7). Accordingly, if this Court dismisses Miller's federal law claims for failure to state a claim upon which relief can be granted, it should also decline to exercise supplemental jurisdiction over Miller's state law claims.

Turning to the merits, Miller's state claims also fail. Miller asserts that the Secretary selectively enforced his administrative rules against Miller when he rejected his application and requested that he certify to personhood. (*Id.* ¶¶ 53, 66). In doing so, Miller asserts that the Secretary violated article 1, §§ 3 and 34 of the Wyoming Constitution. (*Id.* ¶¶ 51-53, 64-66). Specifically, regarding article 1, § 3, Miller asserts that the Secretary's "selective enforcement against [Miller] . . . constitutes a distinction in [Miller's] political rights and privileges based on a circumstance or condition[.]" (*Id.* ¶ 53). Similarly, under article 1, § 34, Miller assert that the Secretary selectively enforced the written certification requirement against him but no other similarly situated candidate. (*Id.* ¶ 66). As a result, he requests that this Court declare that the Secretary violated article 1, §§ 3 and 34 of the Wyoming Constitution.

While the Wyoming Constitution does not contain an express equal protection clause, the Wyoming Supreme Court considers article 1, §§ 3 and 34 as "equality provisions." *Newport Intern. Univ., Inc. v. State Dep't. of Educ.*, 2008 WY 72, ¶ 15 186 P.3d 382, 387 (Wyo. 2008). The Wyoming Supreme Court has historically applied the federal equal

protection analysis to resolve state claims arising from these constitutional provisions. *Id.*

Miller's claims that the Secretary violated article 1, §§ 3 and 34 because he imposed different requirements on Miller than on other alike applicants fails to state a claim for the same reason as his federal equal protection claim. (Am. Compl. ¶¶ 53, 66). Miller does not make any allegations demonstrating there were similarly situated applicants. This Court should dismiss Miller's claims that the Secretary violated article 1, §§ 3 and 34 of the Wyoming Constitution.

Next, Miller asserts that the Secretary's decision to reject Miller's application caused the "exclusion of a duly qualified candidate from the ballot [which] interferes with voters' untrammeled exercise of suffrage." (Am. Compl. ¶ 56). As a result, Miller requests that this Court declare that the Secretary violated article 1, § 27 of the Wyoming Constitution. But Miller does not have standing to assert the rights of all Wyoming voters. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Accordingly, this Court should conclude that Miller fails to state a claim upon which relief can be granted.

Federal courts have jurisdiction over "cases" and "controversies." U.S. Const. art. III, § 2. One component of the case and controversy requirement is that the plaintiff must have standing to bring an action in federal court. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). To have standing, the plaintiff must demonstrate: (1) he has suffered an injury in fact, (2) there is a causal connection between the injury and the alleged conduct, and (3) it is likely the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. General grievances about the government and claiming harm to citizens generally when the government applies laws does not state a case or controversy. *Lance*, 549 U.S. at 1196.

Miller's argument that the Secretary's rejection violated article 1, § 27 because

Wyoming voters cannot vote for him does not demonstrate standing or assert a case or controversy. An injury is an "injury in fact" if it is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Miller's argument that the Secretary's rejection violated article 1, § 27 because Wyoming voters cannot vote for him does not demonstrate standing or assert a case or controversy. Specifically, Miller does not allege that he will personally suffer a concrete and particularized harm. Instead, he asserts that the Secretary's action harms Wyoming voters' ability to vote for him. (Am. Compl. ¶ 56). In doing so, Miller attempts to assert the rights of all voters in Wyoming, but does not allege how his specific rights or interests are harmed or that his rights are even implicated. This generalized claim brought on behalf of Wyoming voters fails to articulate particularized standing for the purposes of Miller's article 1, § 27 claim. *See Fairchild v. Huges*, 258 U.S. 126, 129 (1922) (concluding that plaintiff's assertion that citizens have a right to require the government to be administered accordingly to law did not assert a case or controversy). Miller thus fails to state a claim upon which relief can be granted and this Court should dismiss his article 1, § 27 claim.

Next, Miller asserts that the Secretary deprived him of his protected interest in ballot access without adequate notice and the opportunity to be heard. (Am. Compl. ¶ 61). Specifically, Miller conclusively states, "[the Secretary] has deprived [Miller] of his protected interest in ballot access without adequate notice, fair procedure, or meaningful opportunity to be heard." (*Id.*). As a result, Miller requests this Court declare that the Secretary violated Miller's due process rights under article 1, § 6 of the Wyoming Constitution.

Miller fails to allege a state due process claim for the same reason he fails to allege a federal due process claim. The Wyoming Supreme Court has adopted the federal tests for

analyzing procedural and substantive due process claims. *Mondt v. Cheyenne Police Dep't*, 924 P.3d 70, 74-75 (Wyo. 1996); *Ailport v. Ailport*, 2022 WY 43, ¶ 7, 507 P.3d 427, 433 (Wyo. 2022). To allege a state due process claim, he must demonstrate that he has protected liberty or property interest. *Stears*, 491 F.3d at 1162. Miller has not alleged that he has a protected liberty or property interest in appearing on the ballot as "Victor." Therefore, this Court should dismiss his state due process claim for failure to state a claim upon which relief can be granted.

Next, this Court should also dismiss Miller's claim that the Secretary violated his free speech rights under article 1, § 20 of the Wyoming Constitution. (Am. Compl. ¶¶ 62-63). When a plaintiff raises a state constitutional claim, the state constitutional analysis takes primacy over the federal analysis if the state constitutional claim is properly raised. Boyer v. State, 2025 WY 93, ¶ 11, 574 F.3d 161, 165 (Wyo. 2025). But regardless of which analysis is used, a plaintiff must first demonstrate a protected free speech interest. *See Allen v. Safeway Stores Inc.*, 699 P.2d 277, 283 (Wyo. 1985) (concluding that the right to free speech is not absolute and derogatory language is not protected speech). As stated above, Miller does not have a protected free speech interest in appearing on the ballot as "Victor." *Timmons*, 520 U.S. at 363. Accordingly, this Court should dismiss Miller's claim that the Secretary violated article 1, § 20 of the Wyoming Constitution.

Additionally, this Court should dismiss Miller's article 1, §§ 6 and 20 claims because they do not satisfy the pleading requirements established in *Iqbal* and *Twombly*. *Iqbal*, 550 U.S. at 555; *Twombly*, 556 U.S. at 1949. In *Twombly*, the Supreme Court recognized that while Rule 8 of the Federal Rules of Civil Procedure "does not require detailed factual allegations," claims for relief must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 1949. Here, Miller's article 1, § 6 claim states, in its entirety, "[the

Secretary] has deprived [Miller] of his protected interest in ballot access without adequate notice, fair procedure, or meaningful opportunity to be heard." (Am. Compl. ¶ 61). This assertion conclusively alleges that constitutional violations occurred, but makes no supporting factual allegations. *See Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (holding that conclusive allegations unsupported by facts are insufficient to state a claim upon which relief can be granted). Similarly, Miller's article 1, § 20 claim states, in its entirety, "[the Secretary]'s rejection compels [Miller] to identify himself other than as he chooses for political expression—a burden on speech protected by article 1, Section 20." (Am. Compl. ¶ 63). This claim also merely asserts that the Secretary impeded his right to political expression, without supporting factual allegations. *Cotner*, 795 F.2d at 902. Accordingly, Miller's article 1, §§ 6 and 20 claims do not satisfy federal pleading requirements and this Court must dismiss the claims. *Id.*

Finally, Miller asserts that chapter 18, § 6 exceeds the scope of Wyo. Stat. Ann. § 22-6-111 and therefore, the rule is ultra vires and void. (Am. Compl. ¶ 68). Relatedly, Miller asserts that the Secretary's decision to enforce chapter 18, § 6 against him is an arbitrary exercise of power under article 1, § 7 of the Wyoming Constitution because the rule exceeds the scope of § 22-6-111. (*Id.* ¶ 59). Miller's reliance on § 22-6-111 as the authorizing statute for chapter 18, § 6 is misguided. Wyoming statute § 22-6-111 merely grants election officers discretion to accept a person's "generally known" name as the person's name to appear on the ballot. The Secretary has broad authority to promulgate all rules necessary to maintain uniform voting procedures and orderly voting. Wyo. Stat. Ann. § 22-2-121; *Timmons*, 520 U.S. at 358 (concluding that states may promulgate rules for parties, elections, and ballots to reduce election and campaign disorder). The Secretary of State adopted chapter 18, § 6(a) to facilitate

orderly voting by requiring candidates to appear on the ballot in a uniform manner that clearly communicates to voters who they may vote for. Specifically, the rule's requirement that candidates use their full name on the ballot ensures that voters intelligently understand who candidates are and prevents voters from being misled by fictious names or pseudonyms. Accordingly, chapter 18, § 6 does not exceed the scope of its enabling statute, and Miller fails to state a claim upon which relief can be granted. This Court should dismiss Miller's claim under article 1, § 7 that chapter 18, § 6 is ultra vires and void.

## IV.    Conclusion

For the reasons stated in this memorandum, this Court should dismiss Miller's amended complaint for declaratory judgment.

DATED this 24th day of July, 2026.

/s/ Kate Gamble
Kate Gamble #8-7286
Assistant Attorney General
Mackenzie Williams # 6-4250
Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7877
kate.gamble2@wyo.gov
mackenzie.williams@wyo.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served this 24th day of July, 2026, by the following means:

Victor Miller                                         [✓] U.S. Mail and E-Mail
100 E 28th St.
Cheyenne, Wyoming 82001
(307) 630-6010
rationalgovernancealliance@gmail.com


                                                      */s/ Kate Gamble*
                                                      Office of the Wyoming Attorney General